**Galen C. GRABILL, Michael W. Nichols, James A. Petersen, Jeffrey L. Petersen, and Jayne Petersen, Appellants,**

v.

**ADAMS COUNTY FAIR AND RACING ASSOCIATION, Gail Hampel, Karen Hampel, and Roger Ruchti, Appellees.**

No. 02–0646.

Supreme Court of Iowa.

July 16, 2003.

J.C. Salvo and Bryan D. Swain of Salvo, Deren, Schenck & Lauterbach, P.C., Harlan, for appellants.

Dennis M. Gray of Peters Law Firm, P.C., Council Bluffs, for appellees Adams County Fair and Racing Association, Gail Hampel, and Karen Hampel.

Janice M. Thomas of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker & Ordway, L.L.P., Des Moines, for appellee Roger Ruchti.

CARTER, Justice.

Plaintiffs, Galen C. Grabill, Michael W. Nichols, James A. Petersen, and Jeffrey L. Petersen, participants in auto races at the Adams County Speedway in Corning, and Jayne Petersen, spouse of Jeffrey, appeal from a judgment establishing that they had released the racing promoters and others from any claim for injuries arising from a fireworks demonstration at the speedway. The defendants are Adams County Fair and Racing Associa-tion, Gail Hampel, Karen Hampel, and Roger Ruchti. After reviewing the record and considering the arguments presented, we conclude that a release signed by all plaintiffs except Jayne Petersen is a complete defense to their action seeking recovery for personal injuries against all of the defendants. Because Jayne Petersen did not sign the release in question, the trial court's grant of summary judgment on her claim was improper. The grant of summary judgment on the other claims is affirmed. The judgment on Jayne Petersen's claim is reversed and the case remanded for further proceedings on her claim.

Automobile races were held at the Adams County Speedway in Corning on August 22, 2000, as an activity of the defendant Adams County Fair and Racing Association. That evening a special race, known .as the Hav–A–Tampa race, was being held. Defendant Gail Hampel was the promoter of the racing events at the speedway, and defendant Roger Ruchti was a racing official in charge of the fireworks that were to be set off during the event. Gail's wife, Karen, was a person present in the restricted area during the activities.

The plaintiffs who participated in the races were on the infield of the racetrack known as the pit area. This is a restricted area. Each of them was required to sign a release and pay a fee in order to enter the pit area. They testified in their depositions that they had signed similar releases every time they participated in races at other racetracks in Iowa. The release stated in part that the , person signing it waived all claims "arising out of or related to the activity."

Shortly after the parade lap passed the grandstand, Ruchti discharged a firework display in the pit area. Three or four of the fireworks rocketed horizontally into the infield instead of flying into the air. The loose fireworks exploded in the pit area injuring plaintiffs. The injured par-

ties brought the present action against defendants, seeking recovery for personal injuries. Plaintiff Jayne Petersen also joined in the action, seeking recovery for loss of consortium. Defendants filed a motion for summary judgment, which was resisted by plaintiffs. Following a hearing, the district court granted the motion and dismissed the claims of all plaintiffs. Additional facts will be discussed in our consideration of the legal issues presented.

### I. *Standard of Review.*

The court reviews a grant of summary judgment for correction of errors at law. Iowa R.App. P. 6.4. Summary judgment is granted if there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 1.981(3). The resisting party must set forth specific facts showing that a genuine factual issue exists. *Huber v. Hovey,* 501 N.W.2d 53, 55 (Iowa 1993); *Suss v. Schammel,* 375 N.W.2d 252, 254 (Iowa 1985); *Froning & Deppe, Inc. v. S. Story Bank & Trust Co.,* 327 N.W.2d 214, 215 (Iowa 1982). "Summary judgment is proper if the only issue is the legal consequences flowing from undisputed facts." *Huber,* 501 N.W.2d at 55.

### II. *Whether Plaintiffs' Injuries, Caused by the Discharge of Fireworks During a Racing Event, Were Covered by the Release and Waiver of Liability Signed by Them Prior to their Participation in the Event.*

A. *Arguments.* Plaintiffs assert that the releases they signed did not cover the discharge of fireworks because that activity was not related to the racing events in which they were participating. They also assert that the discharge of fireworks is an ultrahazardous activity that should not be included in a blanket release without specific reference to such activity.

Defendants argue this case is particularly suited for resolution on summary judgment, as the matter is simply a question of contract interpretation. They urge the type of release involved here may be enforced even though the parties have not contemplated the precise circumstance that occurred, especially when the risk occurred within the restricted area covered by the release.

B. *Analysis.* The release signed by the plaintiffs stated:

### RELEASE AND WAIVER OF LIABILITY, ASSUMPTION OF RISK AND INDEMNITY AGREEMENT

| Adams Co. Speedway, Corning, Ia | 8/22/00 |
|---|---|
| DESCRIPTION AND LOCATION OF SCHEDULED EVENT(S) | DATE RELEASE SIGNED |

IN CONSIDERATION of being permitted to compete, officiate, observe, work for, or participate in any way in the EVENT(S) or being permitted to enter for any purpose any RESTRICTED AREA (defined as any area requiring special authorization, credentials, or permission to enter or any to which admission by the general public is restricted or prohibited), EACH OF THE UNDERSIGNED, for himself, his personal representatives, heirs, and next of kin:

1. Acknowledges, agrees, and represents that he have or will immediately upon entering any of such RESTRICTED AREAS, and will continuously thereafter, inspect the RESTRICTED AREAS which he enters, and he further agrees and warrants that, if at any time, he is in or about RESTRICTED AREAS and he feels anything to be unsafe, he will immediately advise the officials of such and if necessary will leave the RESTRICTED AREAS

and/or refuse to participate further in the EVENT(S).

2. HEREBY RELEASES, WAIVES, DISCHARGES AND COVENANTS NOT TO SUE the promoters, participants, racing associations, sanctioning organizations or any subdivision thereof, track operators, track owners, officials, car owners, drivers, pit crews, rescue personnel, any persons in any RESTRICTED AREA, promoters, sponsors, advertisers, owners and lessees of premises used to conduct the EVENT(S), premises and event inspectors, surveyors, underwriters, consultants and others who give recommendations, directions, or instructions or engage in risk evaluation or loss control activities regarding the premises or EVENT(S) and each of them, their directors, officers, agents and employees, all for the purposes herein referred to as "Releasees," FROM ALL LIABILITY TO THE UNDERSIGNED, his personal representatives, assigns, heirs, and next of kin FOR ANY AND ALL LOSS OR DAMAGE, AND ANY CLAIM OR DEMANDS THEREFOR ON ACCOUNT OF INJURY TO THE PERSON OR PROPERTY OR RESULTING IN DEATH OF THE UNDERSIGNED ARISING OUT OF OR RELATED TO THE EVENT(S), WHETHER CAUSED BY THE NEGLIGENCE OF THE RELEASEES OR OTHERWISE.

3. HEREBY AGREES TO INDEMNIFY AND SAVE AND HOLD HARMLESS the Releasees and each of them FROM ANY LOSS, LIABILITY, DAMAGE, OR COST they may incur arising out of or related to the EVENT(S) WHETHER CAUSED BY THE NEGLIGENCE OF THE RELEASEES OR OTHERWISE.

4. HEREBY ASSUMES FULL RESPONSIBILITY FOR ANY RISK OF BODILY INJURY, DEATH OR PROPERTY DAMAGE arising out of or related to the EVENT(S) whether caused by the NEGLIGENCE OF RELEASEES or otherwise.

5. HEREBY acknowledges that THE ACTIVITIES OF THE EVENT(S) ARE VERY DANGEROUS and involve the risk of serious injury and/or death and/or property damage. Each of THE UNDERSIGNED, also expressly acknowledges that INJURIES RECEIVED MAY BE COMPOUNDED OR INCREASED BY NEGLIGENT RESCUE OPERATIONS OR PROCEDURES OF THE RELEASEES.

6. HEREBY agrees that this Release and Waiver of Liability, Assumption of Risk and Indemnity Agreement extends to all acts of negligence by the Releasees, INCLUDING NEGLIGENT RESCUE OPERATIONS and is intended to be as broad and inclusive as is permitted by the laws of the Province or State in which the Event(s) is/are conducted and that if any portion thereof is held invalid, it is agreed that the balance shall, notwithstanding, continue in full legal force and effect.

I HAVE READ THIS RELEASE AND WAIVER OF LIABILITY, ASSUMPTION OF RISK AND INDEMNITY AGREEMENT, FULLY UNDERSTAND ITS TERMS, UNDERSTAND THAT I HAVE GIVEN UP SUBSTANTIAL RIGHTS BY SIGNING IT, AND HAVE SIGNED IT FREELY AND VOLUNTARILY WITHOUT ANY INDUCEMENT, ASSURANCE OR GUARANTEE BEING MADE TO ME AND INTEND MY SIGNATURE TO BE A COMPLETE AND UNCONDITIONAL RELEASE OF ALL LIABILITY TO THE GREATEST EXTENT ALLOWED BY LAW.

Contracts releasing persons from liability for their own negligent acts have been found to be enforceable and are not contrary to public policy. *Bashford v. Slater,* 250 Iowa 857, 865, 96 N.W.2d 904, 909 (1959); *Weik v. Ace Rents, Inc.,* 249 Iowa 510, 515, 87 N.W.2d 314, 317 (1958); *Sears, Roebuck & Co. v. Poling,* 248 Iowa 582, 587, 81 N.W.2d 462, 465 (1957). Releases assented to by participants in hazardous activities have been upheld in *Huber,* 501 N.W.2d at 55; *Bashford,* 250 Iowa at 865, 96 N.W.2d at 909; and *Korsmo v. Waverly Ski Club,* 435 N.W.2d 746, 748 (Iowa Ct. App.1988).

■ The release clearly identifies the individuals who are to be considered released parties: "promoters, participants, racing associations, sanctioning organizations or any subdivision thereof, track operators, track owners, officials, car owners, drivers, pit crews, rescue personnel, any persons in any RESTRICTED AREA, promoters, sponsors, advertisers, owners and lessees of premises used to conduct the EVENT(S) . . . and each of them, their directors, officers, agents and employees." The Adams County Fair and Racing Association should be covered as a racing association. Gail Hampel was the promoter of the racetrack and should be covered by the release as a promoter. Roger Ruchti was an official at the races, first as a ticket-taker, then as a tech inspector and finally was in charge of the pit gate. Additionally, Ruchti had been in charge of discharging fireworks each year at the racetrack since 1988 or 1989. He would seem to be covered as an official of the event or as any person in the restricted area. The record does not disclose Karen Hampel's role at the racetrack, but she would be covered by the release as "any person in the restricted area."

Plaintiffs' contention that the release waived only damages caused by racing contravenes the rather broad language used in the release. The release specified the description and location of the "event(s)" as "Adams Co. Speedway, Corning, Ia." It is also clear that anyone participating in the "event(s)" or entering the "restricted area" was required to sign the release. For example, the release requires the signer to continuously inspect the restricted areas and leave such areas if he feels unsafe. Also, it releases a large group of individuals from "ALL LIABILITY," even when caused by the negligence of the released parties. We believe the language "HEREBY acknowledges that THE ACTIVITIES OF THE EVENT(S) ARE VERY DANGEROUS" implies that more than racing is included in the festivities.

Although it does not appear in the record that the plaintiffs participating in the races had knowledge that there would be a fireworks display that evening, each testified in their depositions that they had participated at other racetracks where fireworks were discharged. In upholding the release of a race promoters liability in *Huber,* we recognized that a releasing party does not need to have contemplated the precise occurrence that caused injury as long as the occurrence was within the broad range of events that might transpire with respect to the matter being undertaken. *Huber,* 501 N.W.2d at 56; *see also Korsmo,* 435 N.W.2d at 749 (parties need not contemplate precise occurrence as long as it is within a broad range of likely activities). Judged by this standard, we believe that the district court properly granted the motion for summary judgment.

■ Plaintiffs also argue that including the discharge of fireworks within the scope of the release would be improper because fireworks present an ultrahazardous activity. Plaintiffs cite to 35 C.J.S. *Explosives* § 34 (1999) in support of their position that the discharge of fireworks is an ultrahazardous activity. Although it is illegal to discharge fireworks within Iowa without a permit, it does not appear to us that the discharge of fireworks is an ultrahazardous activity. It has been recognized that

a fireworks display is not an ultrahazardous activity even though it is an activity that threatens a grave risk of harm or death, since the risk of serious harm from the discharge of fireworks is one

that could be eliminated through the non-negligent manufacture of the fireworks, and since fireworks displays are a matter of common usage on appropriate occasions such as the Fourth of July. 57A Am.Jur.2d *Negligence* § 403, at 395 (1989). More importantly, we are satisfied the danger that the fireworks presented in the restricted area was a matter against which the racing promoters were attempting to protect themselves.

III. *Whether the Comparative Fault Statute Regarding Spousal Consortium Claims Negates Prior Case Law Holding Such a Claim is Not Derivative of the Spouse's Claim.*

Plaintiff Jayne Petersen argues that her claim for loss of consortium is not covered by the release because she did not sign it and was not otherwise made a party to its provisions. In support of her claim, she notes that we held in *Huber*, 501 N.W.2d at 57, that the release we upheld in that case as precluding the claims of a racing participant who signed the release did not bar his spouse's claim for loss of consortium because she had not signed the document. We reach a similar conclusion in the present case. Although defendants urge that a 1997 amendment to Iowa Code section 668.3 provides that an injured person's claim is imputed to that person's spouse in the trial of a loss-of-consortium claim, that statute in no way negates the fact recognized in *Huber* and other cases that the claim continues to be that of the spouse seeking recovery for loss of consortium. While section 668.3(1)(b) may aid defendants in the trial on the merits, it does not serve to subject a loss-or-consortium claimant to the terms of a release that the claimant has not signed or otherwise accepted.

We have considered all issues presented and conclude that the grant of summary judgment dismissing the claims of the male plaintiffs is affirmed. The judgment dismissing the claim of plaintiff Jayne Petersen is reversed, and the cause is re-manded for further proceedings on her claim.

**AFFIRMED IN PART AND REVERSED IN PART.**

All justices concur except LARSON, J., who takes no part.